```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

 3    JOHN E. FELGAR,               :
                Plaintiff          :
 4                                  :
            v.                      :      No. 05-126E
 5                                  :
      PENNSYLVANIA BOARD OF         :
 6    PROBATION AND PAROLE, ET AL., :
                Defendants          :
 7

 8

 9            Hearing in the above-captioned matter held

10       on Friday, September 23rd, 2005, commencing at

11       10:00 a.m., before the Honorable Susan Paradise Baxter,

12       at the United States Courthouse, Courtroom B, 617 State

13       Street, Erie, Pennsylvania 16501.

14

15

16    For the Plaintiff:

17       Kemal Alexander Mericli, Esquire (Via telephone)
         Office of the Attorney General
18       564 Forbes Avenue
         Pittsburgh, PA 15219
19

20    For the Defendant:  (Via Telephone)

21       John E. Felgar (Pro se)

22

23

24

25            Reported by Janis L. Ferguson, RPR
```

1                          I N D E X

2

3   TRANSCRIPT OF PROCEEDINGS  . . . . . . . . . . . .  3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              THE COURT:  Good morning.

 2              MR. MERICLI:  Good morning, Your Honor.

 3              THE COURT:  I apologize.  I did a return phone

 4    call at five of 10:00, thinking it would take two minutes,

 5    and, of course, it took longer, and I apologize for being

 6    late.

 7              MR. MERICLI:  That's no problem, Your Honor.

 8              THE COURT:  Let me call the case.  It's John E.

 9    Felgar versus Pennsylvania Board of Probation and Parole, et

10    al., Civil Action No. 04196-Erie.

11                   In my chambers I have my staff attorney,

12    Frank Fogl, Esquire, and the court reporter.

13                   Kem, will you identify everyone on line.

14              MR. MERICLI:  Okay.  Kemal Alexander Mericli for

15    the Office of the Attorney General and the defense in this

16    case.

17                   Mr. Felgar, will you please identify

18    yourself.

19              MR. FELGAR:  Yes.  At this time I'd like to ask

20    for a continuance.

21              THE COURT:  Yes, I received your motion for a

22    continuance.  However, we have -- issues are coming up,

23    because October 10th is your date.  So I denied the motion

24    for a continuance, because I don't think you need an

25    attorney for this and because I wanted to get this issue
```

1    taken care of today.  And I had continued today's hearing --
2    last week's hearing to today to try to get to the bottom of
3    the issues and also get to the bottom of your motion for a
4    preliminary injunction.  Which, by its terms, Mr. Felgar
5    asked for immediate relief.  So I'm going to deny the motion
6    for a continuance.
7            Let's figure out here -- well, I'll let
8    Mr. Mericli at least speak now to tell us what he's
9    discovered that I asked him to look into over the course of
10   this past week.
11           MR. MERICLI:  Okay.  I understand that Mr. Felgar
12   has a letter that I sent to you and that I just faxed a copy
13   to Kaylene Carlson.  And it's my study of the records in the
14   case, which according to the Department of Corrections, he
15   has an expiration date of October 10th, 2005.
16           And the confusion arises in part because the
17   court system had switched back and forth over the label of
18   the crime the six- to 24-month sentence is on; whether it's
19   terroristic threats or whether it's simple assault, both of
20   which he pleaded guilty to, and a recklessly endangering
21   charge was nolle prosqued at that time.
22           And I have gone through to show that he was
23   sentenced following that guilty plea on October -- on
24   August 22nd, 2002.  And that I think what may have disturbed
25   Mr. Felgar is the fact that before that occurred, from

1    October 2nd, 2001 till August 17th, 2001, he was in a CCC

2    center, and when the time went to revoke his parole and give

3    him back time, that CCC time was not treated as -- as

4    confinement time; it was treated as street time and erased.

5    And that that was reviewed by the Commonwealth Court, and

6    they upheld that, using an analysis taken from a case called

7    Rivenbark and said that the renewal CCC center wasn't enough

8    of a jail for him to get credit for time served on that

9    time.

10            And the even more confusing question is he

11    had a girlfriend at the time.  Her name was Diana Hoobler.

12    And she came forward only on October 2nd, 2001 to say that

13    an incident had occurred on August 15th, 2001, and that

14    incident was the basis for his guilty plea to the

15    terroristic threats and simple assault on August 22nd, 2002.

16            And you may be confused, because, in effect,

17    his prior aggravated assault and second-time DUI sentence

18    had already fully maxed out by the time they brought this

19    charge, based on what Diana Hoobler had said.  And they went

20    back and violated his parole on that two- to four-year

21    sentence, even though that sentence had expired, common

22    sensically, by the time they went back to do this.  And the

23    rationale for that is stated in a case that I put in my

24    letter, and it's also in Mr. Engelberg's answer to the

25    habeas, Young versus the Pennsylvania Board of Probation and

1   Parole.

2               The fact is when he committed the crimes

3   against Diana Hoobler on August 15, 2001, that sentence on

4   the aggravated assault, DUI of two to four years had not yet

5   expired.  So the fact that the crime -- and an arrest

6   warrant was also filed on October 24th, 2001.  So the fact

7   that both the crime and the arrest occurred before you maxed

8   out on the two- to four-year sentence allows them to go back

9   and give him a back-time hit on the two- to four-year

10  sentence and take away some of the street time and make him

11  serve that time before he gets to serve the six to 24

12  months.

13              THE COURT:  Now, is Young a Supreme Court case of

14  the state?

15              MR. MERICLI:  No.  It's a Commonwealth case --

16  yes, it is.  It's a Supreme Court case.  I'm sorry.  It's a

17  Supreme Court case.  His case about whether he got credit

18  for the time served in the CCC center is a Commonwealth

19  Court case.

20              THE COURT:  Okay.  Mr. Felgar --

21              MR. FELGAR:  Yes.

22              THE COURT:  -- it is true that there is a Supreme

23  Court of Pennsylvania case that says that the Parole Board

24  can go back, make you do back time for an expired sentence

25  if you are convicted later of having committed a crime

1    during your parole before that sentence expired.

2              MR. FELGAR:  Right.

3              THE COURT:  And that is what they are arguing they

4    did.

5              MR. FELGAR:  Right, Your Honor.  But what has

6    happened here is I was violated, and I was not given notice

7    of -- I have asked for a full board hearing, revocation

8    hearing, and I was not given notice of the hearing or

9    anything, and I maxed out.  And right there, that -- my

10   parole was done.

11             THE COURT:  Yes, but they didn't give you a notice

12   of it because they didn't charge you until after it was

13   maxed out.

14             MR. FELGAR:  I was charged before.

15             THE COURT:  Not according to this.

16             MR. FELGAR:  On October 1st, 2001.  I was charged

17   with violating parole from assaultive behavior.

18             MR. MERICLI:  Yeah, there was the Parole Board --

19             MR. FELGAR:  To the current charge; simple

20   assault, terroristic threats.  And then I got violated again

21   a year later.  That's double jeopardy.  I don't care how --

22   which way anybody --

23             THE COURT:  When did you get violated a year

24   later?

25             MR. FELGAR:  On November 11th, 2002, I had a

```
 1   revocation hearing on the same charges.
 2              MR. MERICLI:  Well, no.
 3              THE COURT:  No.  No, no, no.  You didn't get
 4   another violation then.  It says in Mr. Mericli's letter, it
 5   says you would have maxed out on November 11th.  Right?
 6              MR. MERICLI:  Right.  And he got his -- he -- what
 7   happened is he -- he -- Diana Hoobler did not want him to
 8   come from the renewal CCC center and live in her home, which
 9   was his plan.  Which was the plan that everyone was working
10   with.
11              MR. FELGAR:  Excuse me.  That was my home, sir.
12              MR. MERICLI:  Oh.  Well, your home.  Anyway, she
13   didn't -- she at that point revealed this incident which he
14   subsequently pleaded guilty to, which was supposed to have
15   taken place on August 15th, 2001.  But she waited -- and
16   according to the Parole Board records, she said the reason
17   is she didn't want them to be living together in a home
18   jointly.  And that's why she waited until October 2nd, 2001,
19   when he was due to be finished with his renewal CCC program.
20              MR. FELGAR:  Sir, the sole reason she didn't want
21   me to come home is because she was seeing the next-door
22   neighbor.  She ended up marrying --
23              THE COURT:  Well, it doesn't matter what the
24   reason.  It doesn't matter.
25              MR. MERICLI:  It doesn't matter.  You know, this
```

1     is why that came to a head then.

2               MR. FELGAR:  This is all irrelevant.

3               THE COURT:  Yes, but what is relevant is on

4     August 22nd, 2002, you weren't given a double jeopardy hit.

5     The first time, from my understanding, it was a revocation

6     violation.  In 2002, it was charges arising out of assault.

7     Those are two different things.

8               MR. MERICLI:  Well, no.

9               THE COURT:  Right?

10              MR. MERICLI:  Yes.  He was -- he was -- the

11    arrest -- he was arrested on a Parole Board warrant on

12    October 2nd, 2001, based on the charges Diana Hoobler made

13    that he had assaulted her.  Then subsequently, on

14    October 24th, 2001, the local police filed a criminal arrest

15    warrant.  So there were two warrants out then.  There was a

16    detainer and there was the police arrest warrant.

17              On November 11th, 2001, he maxed out on his

18    two- to four-year sentence without considering whether or

19    not he would get a hit.  At that point he was switched over

20    to custody on the arrest warrant that was filed by the local

21    police on October 24th, 2001.  He then made bail at $500.

22    He stayed out on that bail until July 8th, 2002.  For some

23    reason, which I don't know, on that date, his bail was

24    revoked.

25              Then he went to a guilty plea, represented by

1    counsel, on August 22nd, 2002, and he pleaded guilty to

2    terroristic threats and simple assault, and the reckless

3    endangerment charge was nolle prosqued.  Then he got a six-

4    to 24-month sentence.  At that point he started to serve the

5    six- to 24-month sentence.

6            Then -- and I do understand why it seems

7    astonishing.  Then out of nowhere, it must have seemed like

8    to him, the Parole Board on December 11th, 2002, tells him,

9    wait a minute, you're going to get a back-time hit on your

10    parole.  He said, wait, I maxed out on that sentence

11    November 11th, 2001.  They said, doesn't matter; you had --

12    you had a Parole Board revocation warrant in there on

13    October 2nd, 2001, and you subsequently had an arrest

14    warrant from the local police on October 24th, 2001, and

15    that gives us jurisdiction to go back and take a look at

16    your two- to four-year sentence and see if we want you to do

17    some back time on that.

18            They then gave him a 12-month hit on the back

19    time, which started to run on December 10th, the date they

20    had that hearing, and he served out that 12-month hit until

21    April the 10th of 2004, and then he went on to this six to

22    24 months, having already served six months, two days before

23    all this stuff caught up with him.

24        THE COURT:  I now get it.  I finally get it.  I

25    reread your letter and thought I got it, but I didn't.  Now

```
 1   I get it.  I get it.

 2           MR. MERICLI:  So this man is amazed, you know, and

 3   to give him -- to give him his dignity, it is amazing.

 4           THE COURT:  It is amazing, but I see how it works.

 5   Now, I do want to say one thing, before we go on.

 6   Mr. Felgar, you did not ask to get out early.  What you

 7   asked for in your preliminary injunction motion is that you

 8   would not be placed on probation.  In other words, since you

 9   were in jail, you think that -- you do not want to enforce a

10   concurrent probationary term.

11               And, secondly, you ask for any -- for us to

12   stop any further collection of fines, restitution, or any

13   other money.

14           MR. FELGAR:  I have been asking to be released

15   immediately, ever since this -- this matter began.  The

16   habeas corpus.

17           THE COURT:  I know, but that's not what you ask --

18   I'm here on the preliminary injunction motion, not on the

19   habeas corpus.  I'm here on your preliminary injunction

20   motion.

21           MR. FELGAR:  Okay.

22           THE COURT:  And what you ask for there is for us

23   to stop them from enforcing a concurrent probationary term

24   and to stop them from any further collection of fines, et

25   cetera.
```

11

```
 1              Now --
 2         MR. FELGAR:  Until disposition.
 3         THE COURT:  -- do we know what, if any,
 4    probationary term will be accompanying his release?
 5         MR. MERICLI:  He has a five-year concurrent
 6    probation.  Which every day he served on the six- to
 7    24-month sentence ought to be excused from that -- ought to
 8    be served against that probation.
 9         MR. FELGAR:  That is erroneous, Your Honor.
10         MR. MERICLI:  So that means all he has is the five
11    years left --
12         MR. FELGAR:  Your Honor, can I respond to --
13         THE COURT:  Yes, you sure can.  Let him finish.
14    Wait a minute.  Let him finish, and then you can respond.
15         MR. MERICLI:  Okay.  You know, it's a
16    concurrent -- at one point he said that they were treating
17    it as if it was a consecutive five-year probation.  Which
18    assuming he gets out on October 10th -- and I still think it
19    should be October 8th, and I brought that to his counselor's
20    attention.  But anyway, when he gets out, whenever he gets
21    out, either the 8th or the 10th, he's got to serve the
22    probation.  They had it down at one point as consecutive
23    five years, which means it would run five years from
24    October 10th.  I don't think it should run five years from
25    October 10th.  I think it was imposed as a concurrent
```

```
 1   probation.
 2            So that means during the time he was in jail,
 3   the probation also ran, in my humble opinion.  So that means
 4   however many -- you know, six months and two days plus
 5   whatever it is when he started serving this sentence on
 6   April 10th, 2004, plus all that time should be subtracted
 7   from the five-year probation, and that's how much probation
 8   he has left to do.
 9            THE COURT:  All right.  And what is your argument,
10   Mr. Felgar?
11            MR. FELGAR:  Okay, Your Honor.  The written
12   sentence order, by Court Order on August 26th, 2002, is
13   unambiguous.  What is ambiguous is the negligence behind the
14   actions of officials illegally committing me to the State
15   Correctional Institution --
16            THE COURT:  Can you speak closer.  We're losing
17   you.  Speak into the telephone closer.
18            MR. FELGAR:  Oh, okay.
19            THE COURT:  Go ahead.  Keep going.
20            MR. FELGAR:  Let me start over again.
21            THE COURT:  Yes.
22            MR. FELGAR:  Okay, Your Honor.  The correction of
23   the written sentence by Court Order on August 26th, 2002, I
24   think is clear and unambiguous.
25            THE COURT:  All right, I'm looking at it.
```

```
 1              MR. FELGAR:  What is ambiguous is the negligence

 2     behind the actions of officials illegally committing me to

 3     the State Correctional Institution.  And was the detainer

 4     that the Probation Board lodged against me legal when I was

 5     already currently being held unlawfully.

 6              Your Honor, in regard to the letter of

 7     September 19th, 2005, which was sent to you by Senior Deputy

 8     Attorney General Mericli --

 9              THE COURT:  That's who is on the phone with us,

10     Mr. Mericli.

11              MR. FELGAR:  The respondent.  I filed a motion to

12     object on September 19th, 2005 to this correspondence.

13              THE COURT:  Okay.

14              MR. FELGAR:  Nevertheless, he states in his letter

15     that this case is a, quote, very confusing case, unquote.

16     Which is true, Your Honor, considering the case history of

17     this matter.

18              Clearly, Your Honor, the respondents are

19     trying to make a boilerplate and red herring issue here,

20     when in all actuality, the amended sentence order clearly

21     and unambiguously states that the written sentence order of

22     August 22nd, 2002, is directed to reduce the charge of

23     terroristic threats M-1, not simple assault.

24              Your Honor, in a legal sense, the order was

25     drafted and signed by the Judge of Jefferson County on
```

```
 1   August 23rd, 2002.  The Judge corrected this order on
 2   August 26th, 2002, in effect, suspending the sentence of six
 3   months to two years -- six months' to 24 months'
 4   incarceration, and placing me --
 5              MR. MERICLI:  That's where you're wrong, sir.
 6              MR. FELGAR:  And placing me on probation with
 7   simple assault [sic], to run concurrent with the sentence at
 8   the same docket number.  It says it clearly, Your Honor.  As
 9   far as the plea agreement goes, Your Honor, by legal
10   standards, it should be moot, and the issue of a breach of
11   contract is also in question.
12              THE COURT:  Now, let me --
13              MR. FELGAR:  Your Honor --
14              THE COURT:  Hold on.  I'm speaking.  When I speak,
15   I get to cut in.  I have that privilege.  All right.  Here
16   we go.
17                   In the Sentence Status Summary filed -- this
18   is the last version.  It says that the offense should be
19   simple assault, yet it says, at a six-month to two-year
20   term.  So all they say is changed is the words "terroristic
21   threats" to "simple assault", but with no change of six
22   months to two years.
23              MR. MERICLI:  And that's what -- if I may
24   interject, that's how I understand it too.
25              THE COURT:  Well, that's what I'm reading.  What
```

```
 1    is your argument to that?

 2              MR. FELGAR:  Which sentence status sheet is this?

 3              THE COURT:  This is a Sentence Status Summary.  It

 4    is dated -- where is the date on this?  7/22/04.  It says

 5    "closed Version 6".

 6              MR. FELGAR:  Okay.  Well, they made a new one,

 7    Your Honor.

 8              THE COURT:  Well, I don't have it, so I can't rule

 9    on it.  Where is the new one?

10              MR. FELGAR:  I have got it right here.  And the

11    new one states --

12              THE COURT:  Okay.  Down in the remarks, why don't

13    you read what it says.

14              MR. FELGAR:  Okay.  The new one states, "Version 7

15    is being created to reflect five-year concurrent probation,

16    terroristic threats, 8/22/02.  Note:  This offense has been

17    shown under 4."  Do you see 4 on the copy you have?

18              THE COURT:  Say that again.

19              MR. FELGAR:  "This offense has been shown under 4,

20    nonincarcerated offenses."

21              THE COURT:  Under 4?

22              MR. FELGAR:  Yeah.  Version 4 of the Sentence

23    Status Sheet.  It's in that big square there on the --

24              THE COURT:  Right, right.

25              MR. FELGAR:  And that says, "Version 4 is being
```

16

```
 1   created per Court Order dated 8/26/02.  Sentence order of
 2   8/22 incorrectly lists the charge of simple assault, when it
 3   should be charged as terroristic threats."
 4             THE COURT:  Yes, that's fine.
 5             MR. FELGAR:  Okay.  Now, the rest of this note
 6   down here, it says under 4, "Offenses on Versions 3, 4, 5,
 7   and 6, however, is not visibly shown when bringing up --"
 8             THE COURT:  The court reporter can't understand
 9   you.  You have to speak more clearly.
10             MR. FELGAR:  Okay.
11             THE COURT:  Wait a second.  Do you have a copy of
12   this, Mr. Mericli?
13             MR. MERICLI:  No.
14             THE COURT:  When is the date on this one that
15   you're reading?  It's up in the top right-hand corner.
16             MR. FELGAR:  Yes.  This is 8/31/2005.
17             THE COURT:  Why haven't you sent that to me?
18             MR. FELGAR:  This is in the grievance that I filed
19   here with the DOC.
20             THE COURT:  Yes, but you didn't send it to the
21   Court, so I can't use it to rule.
22             MR. FELGAR:  I just received it.
23             THE COURT:  No, you said you received it in
24   August.  You sent me a ton of stuff.  You didn't send me
25   that.
```

17

```
 1              MR. FELGAR:  Well, when I filed the Motion for
 2   Preliminary Injunction --
 3              THE COURT:  It's not there.
 4              MR. FELGAR:  And this -- this Sentence Status
 5   Sheet is still under grievance here; a grievance procedure.
 6              THE COURT:  Yes, but you have a copy of it.  You
 7   should have made a copy of it and sent it to me.  I can't
 8   use it for evidence if I don't have it.
 9              MR. FELGAR:  That's the problem with this hearing
10   over the phone, Your Honor.  I can't present any other
11   evidence --
12              THE COURT:  Yes, but you're sending me all sorts
13   of filings.  Attach it to something.  Make a copy.
14              MR. MERICLI:  If I may interject.
15              THE COURT:  Go ahead.
16              MR. MERICLI:  If it's possible.  I --
17              MR. FELGAR:  I'm not a lawyer.
18              THE COURT:  I know.  I know.
19              MR. MERICLI:  Well, the thing is, it seems to me
20   that, you know --
21              MR. FELGAR:  I'm not finished here, Your Honor,
22   with what I'm --
23              THE COURT:  I know.  But I want to hear what he
24   has to say.  Go ahead.
25              MR. MERICLI:  Okay.  It just seems to me that this
```

```
1   man is disturbed because he --
2           MR. FELGAR:  Disturbed?
3           MR. MERICLI:  Disturbed.  I mean upset.  I mean --
4           MR. FELGAR:  I'm being incarcerated illegally for
5   three and a half years.
6           THE COURT:  Well, it doesn't appear so, so just
7   hold on a second.
8           MR. MERICLI:  Just wait a second.  He's unhappy,
9   disturbed, whatever you want to say, of his position,
10  because he believes that he pleaded guilty on August 22nd,
11  2002 to something, and the problem is that the name of that
12  something has been changed more than once.  And it's also a
13  situation where on -- at one point, when he was originally
14  sentenced -- he was sentenced, whatever he was sentenced
15  for, to six months to 24 months and five-years' concurrent
16  probation.  Now, that's --
17          MR. FELGAR:  That was suspended, and I was placed
18  on five-years' probation.  It says right on the Order, sir.
19  I am reading the Order.
20          MR. MERICLI:  I understand the Order.  But you're
21  saying -- you're saying that the six- to 24-month sentence
22  was a suspended sentence.
23          MR. FELGAR:  Right.
24          MR. MERICLI:  And that he should have been put on
25  probation right at that time.
```

```
 1              MR. FELGAR:  I was placed on probation.
 2              MR. MERICLI:  Why did they put you in prison,
 3   then, right the next day?
 4              THE COURT:  Where is that Order?
 5              MR. FELGAR:  I was delivered to --
 6              THE COURT:  Mr. Felgar, where is that Order that
 7   says that?
 8              MR. MERICLI:  I understand your point.  You're
 9   saying that the six- to 24-month --
10              THE COURT:  Was suspended.
11              MR. MERICLI:  -- was a suspended sentence and that
12   you shouldn't have been thrown over to the six- to 24-month
13   sentence on November 11th, 2001, when you maxed out --
14              THE COURT:  Mr. Felgar, you can't speak while
15   someone else is speaking.
16              MR. MERICLI:  Okay.  Well, just let me finish now.
17   What you're saying is -- what he's saying is, Your Honor --
18   what he's saying -- and I'm not endorsing it or attacking
19   it.
20              THE COURT:  I do understand.  He's saying that it
21   was suspended --
22              MR. MERICLI:  The six- to 24-month was a
23   surplusage statement.  That he was sentenced to six to 24
24   months, and then it was immediately suspended, and he was
25   put on five-years' concurrent probation.  But since he was
```

```
 1   serving -- he was -- his parole had been revoked on his

 2   two-to-four at that time.  So he wouldn't have walked out of

 3   the courtroom if it was a suspended sentence.  But what

 4   happened was he maxed out on the --

 5              MR. FELGAR:  No.  It was amended four days later.

 6   I was given an illegal sentence on August 22nd.  I just sent

 7   that.

 8              THE COURT:  Why was it illegal?

 9              MR. FELGAR:  They had simple assault.  Five years

10   probation, simple assault.  A Misdemeanor 2 only carries two

11   years, Your Honor, not five years.

12              MR. MERICLI:  That's the first time I heard this.

13              THE COURT:  Well, did you --

14              MR. FELGAR:  They switched it to terroristic

15   threats.

16              THE COURT:  Did you appeal that?

17              MR. FELGAR:  Pardon me?

18              THE COURT:  Did you appeal that?

19              MR. FELGAR:  What do you mean, did I -- yeah, I

20   went to a post-conviction hearing.

21              THE COURT:  But you didn't appeal it directly.

22              MR. FELGAR:  I didn't know about it.  I was not

23   informed of this.

24              THE COURT:  Okay.  When you appealed it --

25              MR. FELGAR:  But after the revocation hearing, six
```

1    months later I found out about this.  I stated that in my

2    petition -- my Answer petition.

3              THE COURT:  All right.  And what happened at the

4    PCRA level?

5              MR. FELGAR:  My -- my public defender avoided his

6    public office position, Your Honor --

7              MR. MERICLI:  Did you plead guilty on

8    August 22nd --

9              THE COURT:  Wait a minute, Kem.

10             MR. FELGAR:  He sided with the Commonwealth to

11   cover up this illegal commitment.  The respondent should not

12   even be responding here.

13             MR. MERICLI:  I understand.

14             MR. FELGAR:  They already committed fraud in the

15   original filings here, and they are in default, Your Honor.

16             THE COURT:  No.  No.  All right.  Hold on.  Hold

17   on.

18             MR. MERICLI:  Yeah.  Here is my question, Your

19   Honor --

20             MR. FELGAR:  This is against the rules; Rule 5.

21             THE COURT:  They are not in default.  Why are you

22   saying they are in default?

23             MR. MERICLI:  Because he doesn't want me to talk.

24             THE COURT:  There's no reason to -- under the

25   Rules --

```
 1              MR. FELGAR:  They altered my Sentence Status

 2    Sheet.  The evidence that they put against me to you.

 3              THE COURT:  They doctored the evidence --

 4              MR. FELGAR:  To hide the fact that I was doing a

 5    five-year probation sentence for terroristic threats.

 6              THE COURT:  You're charging that they doctored the

 7    sheets that they gave me.

 8              MR. FELGAR:  Right.  Them and Unit -- G Unit here

 9    at the institution, it come to my attention that the

10    Sentence Status Sheet here was also altered.

11              THE COURT:  Do you have any proof of that?

12              MR. FELGAR:  Yes.  I sent it to you, Your Honor.

13    And I got proof from the grievance that I'm filing.

14              THE COURT:  What did you send me?

15              MR. FELGAR:  Now they are trying to -- in the

16    grievance, they are trying to say that it was a glitch in

17    the system, in the computer system.  And glitches don't --

18    computers, copy machines, and fax machines don't make

19    glitches.  This was just a copy of the -- July 22nd, 2004

20    copy of my Sentence Status Sheet.

21              THE COURT:  All right.  Hold on one second.

22              MR. FELGAR:  The time and date is the same

23    exact --

24              MR. MERICLI:  Can I interject at some point?

25              MR. FELGAR:  -- in my Answer petition, and the
```

1    respondent's copy was deleted.

2            THE COURT:  All right.  Okay.  That's on the

3    record.  Go ahead, Mr. Mericli.

4            MR. MERICLI:  I just want to put the following

5    focal point on -- in front of the Court.  That is, before

6    his two- to four-year sentence for aggravated assault and

7    second offense DUI had expired, on August -- rather, before

8    that time, on October 24th, 2001, he was arrested on

9    criminal charges arising out of the Complaint of Diana

10   Hoobler.  Prior to that time, on October 2nd, 2001, he had a

11   parole revocation warrant arising out of the Complaint of

12   Diana Hoobler.

13           Based on those two warrants, which relate to

14   one single incident on August 22nd, 2002, he pleaded guilty

15   in the Court of Common Pleas of Jefferson County to

16   something, and he got some sort of a sentence.  And it seems

17   to me that he can't avoid dealing with that fact.

18           Now, whether that --

19           THE COURT:  Well, I do have --

20           MR. FELGAR:  He's trying to --

21           THE COURT:  Both of you stop.  Both of you stop.

22   I want to interject.  There is a response to a grievance,

23   Mr. Mericli, that states, "On 7/22/04, the latest version of

24   the 16(e) form reflects the charge of terroristic threats as

25   a nonincarcerated offense."

```
 1              MR. FELGAR:  Right, Your Honor.

 2              THE COURT:  "With a sentence of five-years'

 3    probation."

 4              MR. FELGAR:  Right.  Thank you.

 5              THE COURT:  Now, if there is something in the

 6    record that reflects there should be no sentence associated

 7    with that plea, other than a five-year probation, has he

 8    served time he shouldn't have?

 9              MR. MERICLI:  Yeah.  Yes, Your Honor.  He has.  If

10    there's no six- to 24-month sentence, then it seems to me he

11    has served time he shouldn't have.  He served six months and

12    two days on that sentence before the back time had went into

13    effect.  He still would have to serve the back-time hit of

14    December 10th to April 10th.

15              THE COURT:  Right.  Right.

16              MR. MERICLI:  But other than that, the period of

17    six months to two days preceding the December 10th would

18    have been unlawful incarceration, and anytime after

19    April 10th, 2004 would have been unlawful incarceration.

20                   Unless that six- to 24-month sentence reads

21    six to 24 months plus five-years' concurrent probation, he

22    shouldn't have served any more time.

23              MR. FELGAR:  Read the sentence order, sir.

24              MR. MERICLI:  What?

25              THE COURT:  Where is the sentence order?
```

```
 1              MR. FELGAR:  They're trying to make something out
 2     of something that isn't there.
 3              THE COURT:  Where did you give me the sentence
 4     order?  Does anyone have in the record --
 5              MR. FELGAR:  In my Answer petition to respondent's
 6     answer.  My memorandum.
 7              THE COURT:  Okay.  All right.  Let me look.
 8              MR. FELGAR:  Your Honor, if I was already being
 9     illegally held, was the board's detainer that they lodged
10     against me while I was already being illegally held, was
11     that lawful?
12              THE COURT:  Well, I don't know what the sentence
13     order says, and I don't know where this grievance response
14     comes from, because it doesn't have --
15              MR. FELGAR:  I can fax it --
16              THE COURT:  I have it, but it says, "See Gill,
17     records supervisor."
18              MR. MERICLI:  Let me get that.  Excuse me for one
19     second.
20              THE COURT:  That is Appendix A to his preliminary
21     injunction.
22              MR. MERICLI:  Okay.
23              THE COURT:  And let me look for this order.
24              MR. FELGAR:  I've got all this stuff in my lap
25     here, and I don't have --
```

```
 1              THE COURT:  It's hard for me too.  You have to
 2    understand, a court reporter cannot take down five
 3    conversations at one time.  So we all have to give each
 4    other turns.  And I win.  When I want to speak, I win.  Got
 5    it?
 6              MR. FELGAR:  Got it.
 7              THE COURT:  All right.  Now, I have an order
 8    listed August 26th, 2002.  It says, "And now, August 26th,
 9    2002, it having come to the attention of the Court that the
10    written sentence order of August 22nd, 2002 --"
11              MR. MERICLI:  Okay.  Everything --
12              THE COURT:  Hold on.  Hold on.  I'm speaking.
13    Hold on.  "-- incorrectly listed the charge as simple
14    assault, when it should have been charged as terroristic
15    threats.  It is, therefore, hereby ordered that the written
16    sentence order of August 22nd, 2002 is corrected to list the
17    charge as terroristic threats, (M-1)," end quote.  It
18    doesn't say anything about a suspended sentence or anything
19    about the sentence anywhere else.
20              Okay.  Then the probation office, on
21    August 22nd, 2002, "Having entered a plea of guilty in this
22    matter, the imposition of sentence is hereby suspended, and
23    the Defendant is placed on probation for a period of five
24    years under the supervision of the Parole Board under the
25    following conditions:  Said probation shall run concurrent
```

```
 1   with the sentence imposed at 632-2001, charge of simple

 2   assault."  So that's the one that was changed to terroristic

 3   threats.

 4            MR. MERICLI:  Yes, Your Honor.

 5            THE COURT:  Now, I don't understand that.  That

 6   makes no sense.

 7            MR. MERICLI:  It does to me, Your Honor.  Here's

 8   how I think it reads.  First he has a charge on August --

 9            MR. FELGAR:  I'll object to this, Your Honor.

10            MR. MERICLI:  Let me talk.

11            THE COURT:  He's making an argument --

12            MR. FELGAR:  Responding by respondents is against

13   the rules of Rule 5.

14            THE COURT:  Excuse me.  No.

15            MR. FELGAR:  It is --

16            THE COURT:  Mr. Felgar, be quiet.

17            MR. FELGAR:  Okay.

18            THE COURT:  He's making an argument.  He's allowed

19   to make it on behalf of his client, and you can make yours.

20   Now, be quiet.

21                 Go ahead, Mr. Mericli.

22            MR. MERICLI:  Thank you.  On August 22nd, 2002, he

23   was -- the sentence -- the first sentence which is Appendix

24   A(1) and A(2) of his -- to his habeas petition, it shows

25   that simple assault M-2 and a six- to 24-month sentence.
```

1   Then the next thing says simple assault, M-2, and a
2   five-year probation and so many dollars fine and supervision
3   fee.  Then we go to appendix C, which is the Order
4   correcting the sentence of August 22nd, 2002.
5                It seems to me, as he said, terroristic
6   threats is the only charge serious enough to support a
7   five-year probation.  So what happens here is -- the way I
8   read the sentence is they corrected the August 22nd sentence
9   on probation.  They corrected the label to be terroristic
10  threats.  That did not do anything to affect the six- to
11  24-month sentence on the simple assault.
12              THE COURT:  Then why does it say on that Order
13  that the imposition of sentence is hereby suspended?
14              MR. MERICLI:  I don't know.
15              MR. FELGAR:  Right, Your Honor.
16              MR. MERICLI:  Except are they referring -- I guess
17  I don't under understand that without talking to the
18  sentencing Judge, because I don't understand if that's
19  referring simply to the sentence on terroristic threats
20  being otherwise suspended and five-years' probation, or
21  whether that's being -- the ambiguity here is whether that
22  term, "is hereby suspended" refers to both the simple
23  assault sentence and the terroristic threat sentence, or
24  whether it refers to only the terroristic threat sentence.
25  Because you have to suspend the sentence in order to put

1    somebody on five-years' probation.

2              So if you pleaded guilty to simple assault

3    and terroristic threats, then in order to give him the

4    five-year probation tail on the simple assault time, they

5    would have to suspend sentence on terroristic threats and

6    then put the probationary sentence on.  And that's how I

7    read it.  That's how it makes sense to me.

8              Now, what this gentleman wants you to believe

9    is -- is -- wait a minute.  What he wants you to believe is

10   that when they said sentence suspended, they suspended the

11   whole shebang and only put him on the five-year probation.

12   That's his position.

13             Now, the only way this can be clarified

14   beyond -- either I'm reading it right or he's reading it

15   right.  But the person that can tell Your Honor exactly how

16   it should be read is the sentencing Judge.  And that's --

17   there's a writ of habeas corpus under Commonwealth versus

18   Isabel, that whenever there's a confusion like this, you're

19   supposed to file it in the State Court, and the State Court

20   is supposed to tell you what it meant.

21        THE COURT:  What are you supposed to file in the

22   State Court?

23        MR. MERICLI:  A petition for writ of habeas corpus

24   under Commonwealth versus Isabel, asking them to explain

25   what they meant by the terms of their sentence and to make

1  it more clear.

2          MR. FELGAR:  Your Honor, there's another case,

3  Commonwealth versus Quinlan, where powers of the Sentencing

4  Court to correct a sentence is bounded considerations of

5  timeliness on the part of the trial court and on the part of

6  the aggrieved party.  Oral statements being made by a Judge

7  in passing sentence, but not incorporated in the Written

8  Sentence Order signed by Sentencing Judge are not part of

9  the judgment of sentence.

10          MR. MERICLI:  Okay, I understand and I agree with

11  that.

12          THE COURT:  That's correct.  That's correct.  But

13  I don't understand; did he make any statements while he was

14  talking -- giving you the sentence?  You might need those

15  statements.

16          MR. MERICLI:  See, what we have here is a

17  situation where he pleaded guilty to simple assault and

18  terroristic threats.  And then they cut a sentence, and then

19  they went back and corrected it.  And I'm trying to be as

20  neutral as possible.

21              His way, he says when they corrected it, they

22  erased all the incarceration time.  I say when they

23  corrected it, they simply corrected the probationary --

24          THE COURT:  I'm not so sure that's what he's

25  saying.  He's saying that the second -- that the probation

1    order, the second order of August 22nd, 2002 suspended the
2    sentence imposed in the first order.

3             MR. MERICLI:  That's right.  But they are two
4    separate Orders that were handed down on August 22nd.  One
5    related to one count, and one related to other.

6             The problem was --

7             MR. FELGAR:  But the sentence --

8             MR. MERICLI:  Wait a minute.  The problem was they
9    put "simple assault" at the top of each page.  One should
10   have said simple assault, and one should have said
11   terroristic threats.

12            THE COURT:  Oh.  Oh, oh.

13            MR. MERICLI:  Do you see what I mean?  You go
14   to -- it says 632-2001-CR.  Then it says OTN, H284299-1.
15   Then it says, "Charge:  Simple assault, M-2."

16            Now, if you look at the next page, it says
17   all the same thing, and it says, "Simple assault, M-2."

18            Now, the one is a probation, five years, and
19   the other one -- so I thought, the way I read this, is that
20   they -- there are two pages.  The one is sentence, six to --
21   six to 24 months; the other one is sentence, five years
22   probation.  I thought they took that second -- that
23   correction on August 26th was meant for that second page.

24            MR. FELGAR:  So the Order does not say that.

25            MR. MERICLI:  No, it doesn't.  But that's how I

```
 1    read it to make sense.
 2              MR. FELGAR:  That's not saying a probation order.
 3    The written sentence, order incorrectly lists the simple
 4    assault.  The written sentence and order.
 5              MR. MERICLI:  Right.  I'm not arguing with you.
 6    I'm saying --
 7              MR. FELGAR:  I'm not assuming nothing.  I'm just
 8    going by what the Order says --
 9              MR. MERICLI:  I'm not arguing with you either.
10    I'm trying to say that --
11              MR. FELGAR:  I'm not --
12              THE COURT:  One at a time.  I'm not going to
13    have -- wait.  Let me repeat that.  I'm speaking now, so you
14    can take my words down.
15                   The Sentence Correction Order dated
16    August 26th says, "The written sentence Order of August 22nd
17    incorrectly lists the charge as simple assault," so it seems
18    to me --
19              MR. MERICLI:  When it should be charged as
20    terroristic threats.
21              THE COURT:  Right.  So it's on top of that one,
22    not the probation order one.  That one.
23              MR. MERICLI:  They both say simple assault.
24              MR. FELGAR:  You're right.
25              MR. MERICLI:  They both say simple assault.  See?
```

```
 1   The probation one says -- look at the top of the
 2   probation one --
 3            THE COURT:  I understand.  But the only one he
 4   corrected was the sentence order.  He didn't correct the
 5   probation order.
 6            MR. MERICLI:  I see.  I see.
 7            THE COURT:  See what I'm saying?
 8            MR. MERICLI:  Yeah, I see what you're saying now.
 9            MR. FELGAR:  Same thing as the probation order has
10   simple assault, Your Honor.  That's five years.  That's
11   illegal.
12            MR. MERICLI:  They just messed this all up.
13            THE COURT:  They messed this all up.  All right.
14   Here's what I'm going to require you to do.  I am going to
15   recommend --
16            MR. FELGAR:  That's why --
17            THE COURT:  Here's what I -- hold on.  I'm going
18   to recommend denying the motion for preliminary injunction
19   on this basis:  The basis that this is the ultimate decision
20   of the habeas court, and that it will be determined in the
21   proceeding of habeas.  And I can't decide it on a motion for
22   preliminary injunction.
23               Then what I need for you to do, I will stay
24   the habeas -- which is a very unusual move -- for you to go
25   back to Jefferson County Court and get a clarification of
```

1  this sentencing order from this Judge.  And then when you

2  get that, to present it to this habeas court.

3          MR. FELGAR:  Well, Your Honor, one other thing I

4  would like to bring to your attention here.  Is in the

5  Motion to Object, I cited a case, U.S. v. Gerbbie, Third

6  Circuit, 2002.  It says, "Petitioner further avers that

7  ambiguities in sentencing orders --"

8          THE COURT:  I'm sorry.  She didn't get it.  Hold

9  on.  Start again.

10         MR. FELGAR:  It states here, "Petitioner further

11 avers that ambiguities in plea agreements, i.e., sentencing

12 orders, are construed against the drafter."

13             There are several courts, Your Honor, that

14 have ruled against the drafter in ambiguous plea agreements

15 and plea orders.

16         THE COURT:  Hold on for one second.  I'm taking us

17 off the record.  I'm putting you on mute for a second.  I'll

18 be right back.

19         (Brief pause in proceedings.)

20         THE COURT:  I'm back.  Let me ask a question.  Are

21 these the only sentencing and probation orders that were

22 issued that day?

23         MR. FELGAR:  Right, Your Honor.

24         THE COURT:  All right.  This is a mess.

25         MR. MERICLI:  If I may interject, Your Honor.

```
 1              THE COURT:  Go ahead.

 2              MR. MERICLI:  He has a point.

 3              THE COURT:  I know he does.

 4              MR. MERICLI:  I thought that -- but I think what

 5   they did -- and they may be hoist on this, but I think what

 6   they meant to do --

 7              MR. FELGAR:  You can't assume.  You've got to go

 8   by what --

 9              THE COURT:  Excuse me.  Excuse me.  He's just

10   trying to help me figure this out.  He's agreed with you.

11   He's just saying I think they thought they were doing

12   something, but they didn't.

13              MR. FELGAR:  I'm sorry, Your Honor.  It's just so

14   frustrating.

15              THE COURT:  I know.  Well, you're going to have to

16   learn to hold your tongue.

17              MR. FELGAR:  Okay.

18              THE COURT:  All right.  I understand, Mr. Mericli,

19   what you're about to say.  You're about to say you think

20   that they were changing the one order, and they changed the

21   other.

22              MR. MERICLI:  Exactly.

23              THE COURT:  But I have to tell you, that's not

24   what they did.

25              MR. MERICLI:  Exactly.  And I just didn't want you
```

1   to think I understood it until I did understand it.

2            THE COURT:  No, I understand.  I understand.

3            MR. FELGAR:  To go back --

4            THE COURT:  I'm trying to decide whether or not

5   now to order you to go back to the State Court.  Maybe I

6   should look at U.S. versus Gerbbie and see whether I should

7   make this determination myself.

8            MR. FELGAR:  That would be against the rules to go

9   back, Your Honor.

10           THE COURT:  No, it wouldn't.  There are cases that

11  say I can do that.

12           MR. FELGAR:  Section 555 of the Pennsylvania Rules

13  of Criminal Procedure --

14           THE COURT:  Yeah, but I don't go by the Rules of

15  Criminal Procedure of Pennsylvania.

16           MR. FELGAR:  I see.

17           THE COURT:  I go by Federal law.

18           MR. FELGAR:  I'm still learning.

19           THE COURT:  That's okay.  I'm a Federal Judge.

20  You're in Federal Court, so we go by those rules when we

21  can.

22           MR. FELGAR:  Rule 35, then.

23           THE COURT:  Yes.  All right.  I'm going to take

24  this under advisement, do some research.  I'm going to see

25  what U.S. v. Gerbbie and its progeny have to say in the

```
 1   matter before I order anything.
 2             MR. FELGAR:  Could I have ROR bail possibly until
 3   you make a decision on this?  I have only got 14 days left.
 4             THE COURT:  Exactly.  I'm going to let you finish
 5   out those 14 days.
 6             MR. FELGAR:  Why, Your Honor?
 7             THE COURT:  Because I can't make a determination
 8   on this yet.  It's the ultimate habeas decision, and I'm not
 9   prepared to make that determination yet.
10             MR. FELGAR:  Okay.
11             THE COURT:  And if I'm not determining whether
12   you're right at this point, I can't let you out.
13             MR. FELGAR:  Okay.  Two weeks ain't nothing
14   anyways, to what I already did.
15             THE COURT:  But there will be an ultimate
16   determination on this issue, and I'm going to decide whether
17   or not to have you go back and get it clarified by Judge
18   Foradori, or whether or not to rule on it myself.
19             MR. FELGAR:  Okay.  I really need an attorney in
20   this matter, and I will --
21             THE COURT:  No.  No.  We'll figure this out.  You
22   have done a fine job.  You have clarified it today, and you
23   have made us realize where the problem is.
24             MR. FELGAR:  Thank you.
25             THE COURT:  Because the reason is, I'm just
```

```
 1    clearly not sure right now what my authority is.  I can only

 2    act under my own authority, and I will see what that is.

 3                MR. FELGAR:  I appreciate that.

 4                THE COURT:  My staff attorney has just suggested

 5    that once you are released, is this moot.  I disagree that

 6    it is, because there is still an issue of probation and

 7    such.

 8                MR. FELGAR:  Yeah.  I checked into that too.

 9                THE COURT:  Yes.  I still thinks that it affects a

10    lot.

11                MR. FELGAR:  I was worried about that, and I

12    checked into it, and I found several cases --

13                THE COURT:  Quite honestly, I would have taken

14    this under emergency advisement if you have seven months to

15    go, but since you have two weeks, you know --

16                MR. FELGAR:  Well, I did file this over a year

17    ago.

18                THE COURT:  I understand.  I understand.  That's

19    how long habeases take, I'm afraid.

20                MR. FELGAR:  Okay.  Federal Court is kind of

21    crowded right now.

22                THE COURT:  Yes.  And I read the response of the

23    Government, but it's taken us all this long to see what

24    you're talking about, because it's confusing.  Any comments

25    for me on your end before I adjourn?
```

```
 1              MR. FELGAR:  I wanted to finish my letter, though,
 2    in reply to Respondent's letter.
 3              THE COURT:  I have it here.
 4              MR. FELGAR:  No.  No.  This one I just drafted up
 5    in response to his letter to you on the 19th.
 6              THE COURT:  Why don't you send that to me.
 7              MR. FELGAR:  Okay.
 8              THE COURT:  Just send it in.
 9              MR. FELGAR:  Do you want a copy of this grievance,
10    Your Honor?  I'll send this in too.  There's a lot more --
11              THE COURT:  I do not have -- I want to you know, I
12    do not have the Sentence Status Summary you were reading
13    from.  The last one I have is from 2004.
14              MR. FELGAR:  There's a lot more information here,
15    Your Honor, and unlawful acts by officials here at the
16    institution.  And I tried to file charges, and they sent the
17    Office of Professional Responsibility down here, who did
18    nothing.  And I am just -- I don't know what to do --
19              THE COURT:  Well, that's why you're in court.
20    Mr. Mericli, do you have anything you want to add?
21              MR. MERICLI:  No, Your Honor.
22              MR. FELGAR:  I'd like to change my address, Your
23    Honor.
24              THE COURT:  You'll to have do that in writing.
25    You'll to have do that when you send everything in.
```

```
 1              MR. FELGAR:  And I need transcripts too; ask for
 2    transcripts.
 3              THE COURT:  You have to pay for those.
 4              MR. FELGAR:  Oh, I do?
 5              THE COURT:  Yes.
 6              MR. FELGAR:  Okay.  I'll get those when I get out,
 7    then.
 8              THE COURT:  All right.  It's under advisement.
 9    We're going to take a look at what my authority is here.
10    And I will issue either an ROR or an order, depending on
11    that, in due course.  And send me anything else you need to
12    send me.  And, Mr. Mericli, that's with you as well.
13              MR. MERICLI:  Very good, Your Honor.  I apologize
14    if there were any --
15              THE COURT:  Well, no, we were all -- I mean,
16    Mr. Mericli was trying to figure this out himself,
17    Mr. Felgar.  And when he sees what we're talking about now
18    and I see it, we are all stumped.
19              MR. FELGAR:  It took me a year to figure it out.
20              THE COURT:  So now you understand why it took so
21    long.
22              MR. FELGAR:  Yes.
23              THE COURT:  All right.  And we'll try to get it
24    figured out.  All right.  We are --
25              MR. FELGAR:  Because, your Honor, I went to the
```

```
1    Superior Court --

2              THE COURT:  Yes, sir.

3              MR. FELGAR:  -- or my lawyer did, rather, and they

4    didn't even mention the correction to written sentence order

5    to the Superior Court, and I was denied.  The Superior

6    Court, alls they heard was my original sentence.  You know.

7              THE COURT:  Well, I can't correct that.  That's

8    the State Court.

9              MR. FELGAR:  I know.  I went to Supreme and told

10   them about it and told them how the public senator's office

11   was covering -- trying to cover up this matter, and they

12   denied me too.  I don't understand --

13             THE COURT:  I don't know -- you know, I honestly

14   don't know if anyone was trying to commit fraud or cover it

15   up.  I don't think anyone understood it either.

16             MR. FELGAR:  I think Jefferson County became aware

17   of it, and they are liable, Your Honor, for negligence.

18             THE COURT:  Well, that will be a separate suit.

19   All right.  We're adjourned.  Thank you.

20

21             (Proceedings adjourned at 11:02 a.m.)

22

23

24

25
```